1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware
corporation; AMAZON.COM SERVICES
LLC, a Delaware limited liability company;
THE JAMES BRYSON SHEPHERD
TRUST, a Texas trust; and BERKEY
INTERNATIONAL LLC, a Puerto Rican
limited liability company,

Plaintiffs,

v.

VICTORIIA ANANCHENKO, an
individual; YEVHENII KOLISNYK, an
individual; NIKITA KUZNETSOV, an
individual; YURII SMULSKYI, an
individual; and DOES 1-10,

Defendants.

CASE NO. 2:23-cv-01703-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT

This is an action for damages and injunctive relief for trademark infringement and related

claims involving Berkey-branded water filtration systems. This matter is before the Court on

Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon Plaintiffs"),

The James Bryson Shepherd Trust ("Trust"), and Berkey International LLC ("Berkey")'s Motion for Default Judgment and Permanent Injunction. Dkt. No. 22. Defendants have not appeared or responded to the motion. Having reviewed the relevant record, the Court GRANTS the motion.

## I.   BACKGROUND

In recent months, the Western District of Washington has seen "numerous cases brought by Amazon.com, Inc. and Amazon.com Services, LLC, together with other intellectual property owners, against third parties allegedly facilitating the sale of counterfeit products in the Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

Further, the instant motion is the latest in a series of recent motions for default judgment by Amazon Plaintiffs and/or its selling partners that have been handled by courts in this District, including at least three motions recently decided by this Court. *See Amazon.com, Inc. v. Li*, No. C21-1512 et al., 2024 WL 1832466 (W.D. Wash. Apr. 26, 2024); *Amazon Techs. Inc. v. Qiang*, No. C23-1060, 2024 WL 1606109 (W.D. Wash. Apr. 12, 2024); *Amazon.com, Inc. v. Dong*, No. C23-159, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024); *see also, e.g.*, *Amazon.com Inc. v. BAMB AWNS*, No. C22-402, 2024 WL 3276352 (W.D. Wash. July 2, 2024) (Evanson, J.); *Amazon.com Inc. v. Zhi*, No. C20-1215, 2024 WL 943465 (W.D. Wash. Mar. 4, 2024) (Cartwright, J.); *Amazon, Inc. v. Wong*, No. C19-990, 2024 WL 553695 (W.D. Wash. Feb. 12, 2024) (Robart, J.); *Amazon.com, Inc. v. Dai*, No. C21-170, 2023 WL 6233835 (W.D. Wash. Sept. 26, 2023) (Martinez, J.); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217, 2022 WL 19000499 (W.D. Wash. Oct. 3, 2022) (Lasnik, J.); *Amazon.com, Inc. v. White*, No. C20-1773, 2022 WL 1641423 (W.D. Wash. May 24, 2022) (Chun, J.); *Amazon.com v. Kurth*, No. C18-353, 2019 WL 3426064 (W.D. Wash. July 30, 2019) (Jones, J.).

**A.      The Plaintiffs**

Plaintiff Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with its principal place of business in Seattle, Washington. Dkt. No. 23 ¶ 7; Dkt. No. 1 ¶ 7. Plaintiff Amazon.com Services LLC ("Amazon Services") is a Delaware company with its principal place of business in Seattle, Washington. *Id.* Amazon Plaintiffs own and operate the Amazon.com store (the "Amazon Store") and equivalent counterpart international stores and websites. *Id.* ¶ 2. Some products in the Amazon Store are sold directly by Amazon Plaintiffs, while others are sold by its third-party selling partners. *Id.*

Plaintiff Berkey is a Puerto Rican company with its principal place of business in Cataño, Puerto Rico. *Id.* ¶ 9. Plaintiff Berkey designs, manufactures, and distributes Berkey-branded gravity-fed water filtration systems. *Id.* ¶ 3. Plaintiff Berkey also owns the following registered trademarks (the "Berkey Trademarks"): (1) BERKEY, Registration No. 3,721,529 (11); (2) BLACK BERKEY, Registration No. 4,895,008 (11); (3) BB9, Registration No. 6,976,825 (11); and (4) PF-2, Registration No. 6,994,295 (11). *Id.* ¶ 4; *see also* Dkt. No. 1-1 at 2–5 (registration certificates from the United States Patent and Trademark Office). Plaintiff Trust is a trust based in Arlington, Texas. Dkt. No. 1 ¶ 8.

**B.      The Allegations**

**1.      The Amazon Store**

At various times between January 2016 and December 2022, Defendants Victoriia Ananchenko, Yevhenii Kolisnyk, Nikita Kuznetsov, and Yurii Smulskyi established, controlled, and operated various selling accounts in the Amazon Store. Dkt. No. 1 ¶ 32; *see also id.* at 22–23 (Schedule 1 detailing selling accounts). To become a third-party seller in the Amazon Store, sellers are required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's access to and use of Amazon Plaintiffs' services and states Amazon

Plaintiffs' rules for selling in the Amazon Store. *Id.* ¶ 33. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. *Id.*; *see also* Dkt. No. 1-1 at 6–34 (BSA).

Under the terms of the BSA, Amazon Plaintiffs identify the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 1 ¶ 34. The BSA requires the seller to defend, indemnify, and hold harmless Amazon Plaintiffs against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.*

The BSA also incorporates Amazon Plaintiffs' Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store and describes Amazon Plaintiffs' commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the consequences of doing so. *Id.* ¶¶ 35–36; *see also* Dkt. No. 1-1 at 35–37.

Finally, under the BSA, sellers agree that the information and documentation they provide to Amazon Plaintiffs in connection with their selling accounts—such as identification, contact, and banking information—will be valid, truthful, accurate, and complete. Dkt. No. 1 ¶ 37.

## 2. Defendants' Selling Accounts

Plaintiff Berkey reviewed physical samples of the Berkey-branded products sold by Defendants through the selling accounts and determined that the products are inauthentic, that each bears a counterfeit Berkey Trademark, and that Berkey has never authorized the sale of such products. Dkt. No. 1 ¶ 40; Dkt. No. 24 (Shepherd Declaration) ¶¶ 4–5; *see also* Dkt. No. 1 at 22–23 (detailing confirmation of counterfeit products from selling accounts Beyonders, CloudMK, Tayler Weedon, and TiFlowers). Plaintiff Berkey confirmed the products are counterfeit "based on deviations from Berkey's authentic product and packaging." *Id*. Deviations

1    included "substandard packaging that differs from genuine Berkey products," "text with

2    misspellings and font that differs from that used in genuine Berkey products," a lack of

3    "markings used on genuine Berkey products," "fake Berkey holograms utilized to insure genuine

4    Berkey products," and "inferior quality and construction." Dkt. No. 24 ¶ 5. Plaintiffs also

5    determined that Defendants submitted "nearly identical falsified invoices and letters of

6    authorization" to Amazon Plaintiffs in connection with their selling accounts. Dkt. No. 1 ¶ 41.

7        Defendant Ananchenko controlled and operated the CloudMK selling account. *Id.* ¶ 11.

8    The CloudMK account made $52,431.57 in sales. Dkt. No. 23 (Garrett Declaration) ¶ 3.

9        Defendant Kolisnyk controlled and operated the Beyonders selling account. Dkt. No. 1

10   ¶ 12. The Beyonders account made $43,702.49 in sales. Dkt. No. 23 ¶ 3.

11       Defendant Kuznetsov controlled and operated the Tayler Weedon selling account. Dkt.

12   No. 1 ¶ 13. The Tayler Weedon account made $107,167.06 in sales. Dkt. No. 23 ¶ 3.

13       Defendant Smulskyi controlled and operated the TiFlowers selling account. Dkt. No. 1

14   ¶ 14. The TiFlowers account made $97,032.05 in sales. Dkt. No. 23 ¶ 3.

15       After Amazon Plaintiffs confirmed the counterfeit sales, they blocked the selling

16   accounts. Dkt. No. 1 ¶ 45. Amazon Plaintiffs also issued refunds to all customers who purchased

17   counterfeit Berkey-branded products sold by Defendants. Dkt. No. 23 ¶ 4. After accounting for

18   any funds recovered from Defendants' sale proceeds or from Defendants' credit cards on file,

19   Amazon Plaintiffs incurred a total of $186,009.17 in damages in issuing the refunds. *Id.* The

20   damages are broken down as follows: (1) Beyonders: $27,755.00; (2) CloudMK: $18,532.34;

21   (3) Tayler Weedon: $62,441.13; and (4) TiFlowers: $77,280.70. *Id.*

22   **C.    Procedural History**

23       On November 7, 2023, Plaintiffs commenced this action. Dkt. No. 1. Due to difficulty in

24   serving Defendants by conventional means, Plaintiffs moved for alternative service, which this

Court granted. Dkt. Nos. 12, 15. After Defendants failed to appear, Plaintiffs moved for entry of default, which was entered by the Clerk of Court. Dkt. Nos. 17–18. Plaintiffs now bring the instant motion for default judgment. Dkt. No. 22.

## II.   LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.   DISCUSSION

**A.   Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.   Subject Matter Jurisdiction**

The Court finds that it has subject matter jurisdiction in this matter based on Plaintiffs' claims for trademark counterfeiting and infringement and false designation of origin. 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over Plaintiffs' claims under the WCPA and Plaintiff Amazon Services' breach of contract claim. 28 U.S.C. §§ 1332, 1367.

**2.   Personal Jurisdiction**

Washington's long-arm statute is coextensive with the reach of federal due process. RCW 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant need only have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks and citation omitted).

Accepting the allegations as true, the Court finds that it has personal jurisdiction over Defendants, who "affirmatively undertook to do business with Amazon [Plaintiffs], a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Berkey Trademarks and which otherwise infringed [Plaintiff] Berkey's IP." Dkt. No. 1 ¶ 17. "Additionally, Defendants shipped products bearing counterfeit

versions of the Berkey Trademarks to consumers in Washington." *Id.* In other words, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents." *Li*, 2024 WL 1832466, at *4 (quoting *Wong*, 2024 WL 553695, at *2); *accord, e.g.*, *Sirowl Tech.*, 2022 WL 19000499, at *1. "Plaintiffs' claims arose from these contacts with Washington state." *Id.* (quoting *Wong*, 2024 WL 553695, at *2). Defendants also "entered into an ongoing contractual relationship with a Washington State company . . . and then violated that contractual relationship." *Id.* (quoting *Dai*, 2023 WL 6233835, at *2).[1]

## B.     Propriety of Default Judgment

Considering the *Eitel* factors, the Court finds that entry of default judgment is proper.

### 1.     Factor One: Prejudice to Plaintiffs

Without entry of default judgment, Plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal and state law against Defendants. But Defendants have failed to appear or participate in this litigation despite being personally served. "Without default judgment, Plaintiffs will suffer prejudice because they will be denied the right to judicial resolution of their claims and will be without other recourse for recovery." *Li*, 2024 WL 1832466, at *4 (quoting *Wong*, 2024 WL 553695, at *3) (internal quotation marks omitted). This factor favors entry of default judgment.

### 2.     Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of Complaint

As an initial matter, Amazon Plaintiffs agree to voluntarily dismiss their claim for false advertising. *See* Dkt. No. 22 at 15 n.3. Therefore, the claim is DISMISSED.

---

[1] The Court thus need not reach Plaintiffs' alternative basis for personal jurisdiction: the presence of a forum selection clause in the BSA. *See* Dkt. No. 1 ¶ 18; Dkt. No. 22 at 11.

1    Taking the remaining allegations in the complaints as true, Plaintiffs have sufficiently

2  pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d

3  1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel*

4  factors require plaintiffs to state a claim on which they can recover). The Court reviews each

5  claim in turn.

6              **a.    *Trademark Counterfeiting and Infringement***

7    Plaintiff Berkey brings a claim for trademark counterfeiting and infringement against all

8  Defendants. Dkt. No. 1 ¶¶ 46–52. To prevail on a claim for trademark infringement under 15

9  U.S.C. § 1114, Plaintiff Berkey must show that Defendants used:

10           (1) a reproduction, counterfeit, copy or colorable imitation of [its]
             registered trademark, (2) without its consent, (3) in commerce,
11           (4) in connection with the sale, offering for sale, distribution or
             advertising of any goods, (5) where such use is likely to cause
12           confusion, or to cause a mistake or to deceive.

13  *Li*, 2024 WL 1832466, at *5 (quoting *Wong*, 2024 WL 553695, at *4). "Likelihood of confusion

14  exists when consumers viewing the mark would probably assume that the goods it represents are

15  associated with the source of a different product identified by a similar mark." *Wong*, 2024 WL

16  553695, at *4 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

17  608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether confusion is

18  likely:

19           1) the strength of the mark; 2) proximity or relatedness of the
             goods; 3) the similarity of the marks; 4) evidence of actual
20           confusion; 5) the marketing channels used; 6) the degree of care
             customers are likely to exercise in purchasing the goods; 7) the
21           defendant's intent in selecting the mark; and 8) the likelihood of
             expansion into other markets.

22  *KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341,

23  348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both

24

within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Wong*, 2024 WL 553695, at *4 (citing *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiff Berkey alleges that it owns the Berkey Trademarks. Dkt. No. 1 ¶ 4; *see also* Dkt. No. 1-1 at 2–5. Defendants advertised, marketed, offered, distributed, and sold products bearing counterfeit and infringing versions of the Berkey Trademarks. Dkt. No. 1 ¶¶ 32, 40, 50; *id.* at 22–23 (identifying selling accounts operated by Defendants and describing review of the products sold by them). Accepting these allegations as true, the Court finds that it is likely that a reasonable consumer would confuse the products sold through Defendants' selling accounts in the Amazon Store with genuine Berkey products. Therefore, Plaintiff Berkey has stated a claim against all Defendants for trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(a), and the second and third *Eitel* factors weigh in favor of entry of default judgment on this claim.

### b. *False Designation of Origin*

Plaintiff Berkey and Amazon Plaintiffs bring claims for false designation of origin under 15 U.S.C. § 1125(a)(1)(A) against all Defendants. Dkt. No. 1 ¶¶ 53–61 (Berkey), 62–69 (Amazon). To state a claim for false designation of origin, each Plaintiff must allege that Defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Li*, 2024 WL 1832466, at *6 (quoting *Wong*, 2024 WL 553695, at *5). "Although [Plaintiff Berkey] is the trademark holder in this case and not Amazon.com, under § 1125(a), "'any person who

1    believes that he or she is likely to be damaged" by a defendant's false advertising' may sue."

2    *Dai*, 2023 WL 6233835, at *3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

3    572 U.S. 118, 129 (2014)).

4                              (1)    Plaintiff Berkey

5              Here, Plaintiff Berkey alleges that Defendants sold counterfeit Berkey products bearing

6    the Berkey Trademarks. Dkt. No. 1 ¶¶ 5, 32, 56. This unauthorized misuse of the Berkey

7    Trademarks deceived customers into believing that the products were authentic when they were

8    counterfeit. *Id.* ¶ 57. This misuse also wrongfully trades on Plaintiff Berkey's goodwill and

9    business reputation. *Id.* Therefore, Plaintiff Berkey has stated a claim for false designation of

10   origin. *See Li*, 2024 WL 1832466, at *6 (holding the same); *Wong*, 2024 553695, at *5 (same);

11   *White*, 2022 WL 1641423, at *3 (same).

12                             (2)    Amazon Plaintiffs

13             Here, Amazon Plaintiffs allege that Defendants deceived them about the authenticity of

14   the products they were advertising, marketing, offering, distributing, and selling, in violation of

15   the BSA and Amazon's Anti-Counterfeiting Policies. Dkt. No. 1 ¶ 64; *see also id.* ¶¶ 21–29

16   (describing Amazon Plaintiffs' efforts to address the sale of counterfeit goods in their stores).

17   Defendants' acts undermine and jeopardize consumer trust in Amazon Plaintiffs and the Amazon

18   Store. *Id.* ¶ 67. Therefore, Amazon Plaintiffs have stated a claim for false designation of origin.

19   *See Li*, 2024 WL 1832466, at *6 (holding the same); *Dai*, 2023 WL 6233835, at *3 (same);

20   *Sirowl Tech.*, 2022 WL 19000499, at *3 (same).

21        **c.    *Violation of WCPA***

22             Plaintiff Berkey and Amazon Plaintiffs bring a claim under the Washington Consumer

23   Protection Act ("WCPA") against all Defendants. Dkt. No. 1 ¶¶ 70–74. To state a claim under

24   the WCPA, Plaintiffs must allege "(1) an unfair or deceptive act or practice; (2) occurring in the

conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or

property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*,

2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-

1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the

analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair

competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.*

(quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)).

Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and

there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have

already demonstrated the basis for their CPA claim." *Id.* Therefore, Plaintiffs have stated a claim

under the WCPA.

### d.    *Breach of Contract*

Finally, Plaintiff Amazon Services brings a claim of breach of contract against all

Defendants. Dkt. No. 1 ¶¶ 75–80. To state a claim for breach of contract, Amazon Services must

show: "(1) the existence of a contractual duty, (2) breach, (3) causation, and (4) damages."

*Kurth*, 2019 WL 3426064, at *3 (citing *Larson v. Union Inv. & Loan Co.*, 168 Wn. 5, 10 P.2d

557 (1932)).

Here, Plaintiff Amazon Services alleges that Defendants entered into the BSA, which

incorporated by reference Amazon's Anti-Counterfeiting Policy, to which Defendants agreed to

be bound. Dkt. No. 1 ¶ 76. Defendants materially breached the BSA and Anti-Counterfeiting

Policy by selling and distributing counterfeit Berkey products and by submitting falsified

documents to Amazon Plaintiffs both to obtain initial approval to sell the products in the

Amazon Store and to lift their later suspension. *Id.* ¶¶ 78–79. As a result, Amazon Plaintiffs

1  suffered $186,009.17 in damages from issuing customer refunds. Dkt. No. 23 ¶ 4. Therefore,

2  Plaintiff Amazon Services has stated a claim for breach of contract.

3       **3.**     **Factor Four: Sum of Money at stake**

4       Given the substantial sums that are at stake and the seriousness of the alleged

5  misconduct, this factor favors entry of default judgment. See *Curtis v. Illumination Arts, Inc.*, 33

6  F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of

7  money requested in relation to the seriousness of the defendant's conduct, whether large sums of

8  money are involved, and whether the recovery sought is proportional to the harm caused by

9  defendant's conduct") (internal citations and quotation omitted).

10       **4.**     **Factor Five: Possibility of Dispute of Material Facts**

11       There is little possibility that the core, material facts are in dispute. "When default has

12  been entered, courts find that there is no longer the possibility of a dispute concerning material

13  facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp.

14  3d at 1212. Not only have Defendants failed to appear in this action, but Plaintiffs have provided

15  detailed evidence in support of their claims that is likely difficult to be rebutted. There is no

16  evidence suggesting a dispute could arise. This factor favors entry of default judgment.

17       **5.**     **Factor Six: Whether Default Is Due to Excusable Neglect**

18       There is no evidence that Defendants' failure to appear is due to excusable neglect.

19  Indeed, Plaintiffs provide evidence that shows Defendants were properly served yet have still

20  failed to appear in this action. *See* Dkt. No. 16. This factor favors entry of default judgment.

21       **6.**     **Factor Seven: Strong Policy in Favor of Decision on the Merits**

22       The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

23  on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however,

24  the policy favoring decisions on the merits is not dispositive." *Li*, 2024 WL 1832466, at *7

(quoting *Dong*, 2024 WL 775900, at *7). Defendants' decision not to appear in this case vitiates against this policy. This factor favors entry of default judgment.

Therefore, Plaintiffs' motion for default judgment is GRANTED IN PART as to all claims but Amazon Plaintiffs' claim of false advertising, which is DISMISSED, and judgment is ENTERED as to the remaining claims.

**C.    Damages**

**1.       Statutory Damages for Plaintiff Berkey for Violation of the Lanham Act**

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Li*, 2024 WL 1832466, at *8 (quoting *Dong*, 2024 WL 775900, at *7). A plaintiff may recover statutory damages of not less than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Wong*, 2024 WL 553695, at *7 (quoting 15 U.S.C. § 1117(c)(2)). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Dong*, 2024 WL 775900, at *7 (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Wong*, 2024 WL 553695, at *1 (quoting *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014)). Because Plaintiff Berkey has alleged the willful infringement of four Berkey Trademarks (*see, e.g.*, Dkt. No. 1 ¶¶ 5, 50), the Court may award up to $8,000,000 in statutory damages.

Here, Plaintiff Berkey seeks a total of $900,998 in statutory damages against Defendants. Dkt. No. 22 at 22–24; Dkt. No. 22-1 (proposed order) at 2. This award reflects evidence that Defendants sold a total of $300,333.17 in aggregate sales. *Id.* at 22; Dkt. No. 23 ¶ 3.

1    The Court finds that Plaintiff Berkey's request is appropriate and just. Each Defendant

2    engaged in an intentional and coordinated effort to sell counterfeit Berkey products in the

3    Amazon, thus deceiving customers, misusing the Berkey Trademarks, depriving Plaintiff Berkey

4    of sales, and tarnishing the reputation of all Plaintiffs. Dkt. No. 1 ¶¶ 5, 11–14, 32, 42, 50.

5    Plaintiff Berkey's damages request is "consistent with the amounts awarded by other courts in

6    this District for similar conduct, proportional to [Plaintiff's] actual damages, and sufficient to

7    deter [Defendants] from further willful infringement, but is not so great as to result in a windfall

8    for [Plaintiff]." *Li*, 2024 WL 1832466, at *8 (quoting *Dong*, 2024 WL 775900, at *8); *see also*

9    *Dai*, 2023 WL 6233835, at *5 (awarding damages three times the aggregate sales of counterfeit

10   products in the Amazon Store); *Sirowl Tech.*, 2022 WL 19000499, at *5 (same); *White*, 2022

11   WL 1641423, at *5 (same).

12   Therefore, the Court AWARDS Plaintiff Berkey $900,998 in statutory damages as follows:

13   (1) $157,294 against Defendant Ananchenko; (2) $131,107 against Defendant Kolisnyk;

14   (3) $321,501 against Defendant Kuznetsov; and (4) $291,096 against Defendant Smulskyi.

15           **2.       Actual Damages for Plaintiff Amazon Services for Breach of Contract**

16   In addition to statutory damages for violating the Lanham Act, Plaintiff Amazon Services

17   also seeks actual damages against all Defendants for breach of contract. Dkt. No. 22 at 25. "The

18   general measure of damages for breach of contract is that the injured party is entitled to:

19   (1) recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a

20   pecuniary position as he would have had if the contract had been performed." *Entry Select Ins.*

21   *Co. v. Silver Arrow Cars, Ltd.*, No. C19-0598, 2020 WL 1847749, at *3 (W.D. Wash. Apr. 13,

22   2020) (citing *Diedrick v. Sch. Dist. 81*, 87 Wn.2d 598, 610, 555 P.2d 825 (1976)). Here, Plaintiff

23   Amazon Services seeks $186,008 in actual damages that it suffered as a result of Defendant

24   Cui's breaches of the BSA. Dkt. No. 22 at 25; Dkt. No. 22-1 at 2–3.

The Court finds that Plaintiff Amazon Services's request is appropriate and just. Defendants agreed to "defend, indemnify, and hold harmless Amazon . . . against any . . . loss [or] damage . . . arising from or related to . . . [Defendants'] Products, including the . . . refund . . . thereof." Dkt. No. 1-1 ¶ 6.1. Plaintiff Amazon Services issued refunds to customers who had purchased counterfeit Berkey products, in the total of $186,009.17 (after deducting other recovered funds). Dkt. No. 23 ¶ 4. Thus, Plaintiff Amazon Services's damages request is consistent with the amount it is entitled to under the BSA.

Therefore, the Court AWARDS Plaintiff Amazon Services $186,008 in actual damages as follows: (1) $18,532 against Defendant Ananchenko for the amount owed by the CloudMK selling account that she controls; (2) $27,755 against Defendant Kolisnyk for the amount owed by the Beyonders selling account that he controls; (3) $62,441 against Defendant Kuznetsov for the amount owed by the Tayler Weedon selling account that he controls; and (4) $77,280 against Defendant Smulskyi for the amount owed by the TiFlowers selling account that he controls.

## D.    Permanent Injunction

The Lanham Act authorizes "the 'power to grant injunctions accordingly to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)). That is, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

1   and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

2   disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A

3   trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a

4   violation. 15 U.S.C. § 1116(a).

5         Here, Plaintiffs seek a permanent injunction enjoining Defendants from their infringing

6   uses of the Berkey Trademarks. Dkt. No. 22 at 26–31. Specifically, Plaintiffs seek an order:

7         permanently enjoining Defendants, their officers, agents, servants,
          employees, and all others in active concert or participation with
8         them, who receive actual notice of this order, from:

9               a. selling counterfeit or infringing products in Amazon's
                stores;

10              b. selling counterfeit or infringing products to Amazon or
11              any Amazon affiliate;

12              c. importing, manufacturing, producing, distributing,
                circulating, offering to sell, selling, promoting, or
13              displaying any product using any simulation, reproduction,
                counterfeit, copy, or colorable imitation of Berkey's brand
14              or trademarks, or which otherwise infringes Berkey's
                intellectual property, in any store or in any medium; and

15              d. assisting, aiding, or abetting any other person or business
                entity in engaging in or performing any of the activities
16              referred to in subparagraphs (a) through (c) above.

17  *Id.* at 26; *see also* Dkt. No. 22-1 at 3. Plaintiffs argue that all four *eBay* factors weigh in favor of

18  a permanent injunction. *Id.* at 29–31. The Court agrees.

19        First, Plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have

20  alleged (and the Court accepts as true) that Defendants have committed trademark infringement

21  and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). Defendants present

22  no evidence to rebut this presumption, and the Court finds no such evidence in the record.

23        Second, remedies at law are inadequate to compensate Plaintiffs, who have alleged harm

24  to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily

calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, Defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

Third, the balance of hardships strongly favors Plaintiffs. Without an injunction, Plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because Defendants never had a right to infringe [Plaintiff Berkey's] trademark[ ] in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

Finally, a permanent injunction would serve the public interest "in protecting trademark holders' rights and minimizing the confusion caused by the presence of counterfeit products in the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

Therefore, the Court PERMANENTLY ENJOINS Defendants on the terms requested.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)     Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction Against Defendants (Dkt. No. 22) is GRANTED.

(2)     Judgment is ENTERED as to all claims except for Amazon Plaintiffs' claim for false advertising, which is DISMISSED.

(3)     Plaintiff Berkey is AWARDED statutory damages of **$900,998** in the following amounts:

       (a)     $157,294 against Defendant Ananchenko;

       (b)     $131,107 against Defendant Kolisnyk;

       (c)     $321,501 against Defendant Kuznetsov; and

       (d)     $291,096 against Defendant Smulskyi.

(4)     Plaintiff Amazon Services is AWARDED actual damages of **$186,008** in the following amounts:

       (a)     $18,532 against Defendant Ananchenko;

       (b)     $27,755 against Defendant Kolisnyk;

       (c)     $62,441 against Defendant Kuznetsov; and

       (d)     $77,280 against Defendant Smulskyi.

(5)     Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:

       (a)     selling counterfeit or infringing products in Amazon's stores;

       (b)     selling counterfeit or infringing products to Amazon or any Amazon affiliate;

       (c)     importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Berkey's brand or trademarks, or which otherwise infringes Berkey's intellectual property, in any store or in any medium; and

       (d)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

1     (6)     The Court RETAINS jurisdiction over this case for the purpose of enforcing this

Order and Injunction, and for any supplemental proceedings that may be

authorized by law.

     (7)     Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on

Defendants' last known email addresses registered with Amazon, which Plaintiffs

used to complete service.

Dated this 30th day of July 2024.

Tana Lin
United States District Judge